UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KENDRA HALL SIMMONS

CIVIL ACTION

VERSUS

NO. 12-432-JJB-SCR

EXPO ENTERPRISES, INC.,
ET AL.

**RULING**

This matter is before the Court on the defendants Expo Enterprises, Inc. d/b/a Bethlehem Motor World and Imn Jabbar's Motion (rec. doc. 22) for Summary Judgment Due to Lack of Subject Matter Jurisdiction. The plaintiff filed an opposition to the motion. Rec. doc. 30. For the reasons provided herein, the Court **DENIES** the defendants' Motion (rec. doc. 22) for Summary Judgment Due to Lack of Subject Matter Jurisdiction.

**Background**

This action arises out of a disputed transaction involving a 2003 Lexus ES Sedan. On January 25, 2012, Kendra Hall Simmons alleges that she applied for an extension of credit through Expo Enterprises, Inc. d/b/a Bethlehem Motor World ("Bethlehem") in order to purchase a 2003 Lexus ES Sedan. As a result of this application, Bethlehem contacted Westlake Financial Services ("Westlake") "to determine if it would purchase a financing contract between Bethlehem and Ms. Simmons for the purchase and finance of the Lexus." Rec. doc. 1, p. 2, ¶ 9. The plaintiff asserts that "Westlake agreed to purchase such a contract and Bethlehem and Ms. Simmons entered into a contract for the purchase and finance of the Lexus, in which Ms. Simmons was given credit for a $4,000 down payment." Rec. doc. 1, p. 2, ¶ 10. Prior to January 25, 2012, the plaintiff claims that she performed work for Bethlehem but did not receive a paycheck. Instead, the plaintiff agreed to have the amount owed for the services put towards the

1

down payment for a vehicle she would purchase from Bethlehem. Accordingly, to satisfy the required $4,000 down payment, Ms. Simmons allegedly remitted $2,000 in cash to Bethlehem on January 25, 2012, and the remaining $2,000 came from the plaintiff's prior services.

Subsequently, the plaintiff made her first scheduled payment to Westlake on February 23, 2012. However, after the payment was made, Imn Jabbar, the majority shareholder in Expo Enterprises, Inc., informed the plaintiff that she needed to remit an additional $2,000 to Bethlehem for the down payment. Ms. Simmons refused to make such payment. Thereafter, the plaintiff alleges that "Imn Jabbar and Bethlehem . . . notified Westlake that Bethlehem needed to buy the contract back from Westlake, and Westlake sold it back to Bethlehem." Rec. doc. 1, p. 3, ¶ 17. Finally, after the plaintiff persisted in refusing to pay the additional $2,000, "Bethlehem and Jabbar . . . made a police report to the Baton Rouge City Police accusing Ms. Simmons of theft for not returning [the] vehicle to Bethlehem." Rec. doc. 1, p. 3, ¶ 19. At some point later and as a result of the police report, the East Baton Rouge Parish Sheriff's Office detained Ms. Simmons' husband for a short duration of time but did not actually arrest him. To this day, the plaintiff has never received the title to the Lexus, and as a result, she claims to have been deprived of the use of the vehicle. Due to the foregoing allegations, the plaintiff filed the pending lawsuit and set forth claims for relief under the Equal Credit Opportunity Act (ECOA) and Louisiana's state law on defamation.

After the defendants filed their counterclaim, it became readily apparent that the parties possess substantially different views regarding the relevant events. *See* rec. doc. 9-1. In their counterclaim, the defendants acknowledge that the plaintiff was employed by Bethlehem. However, the defendants claim that Ms. Simmons initially requested to use the Lexus while defendant Jabbar was out of the country and after approximately two weeks of employment.

According to the defendants, Mr. Gazi Soman—the individual left to manage Bethlehem while Mr. Jabbar was outside the country—acquiesced to the plaintiff's request. But, at some point thereafter, the plaintiff wrongfully accessed the online database of Westlake, "fraudulently applied for financing and created a false Bill of Sale for the Lexus." Rec. doc. 9-1, p. 2, ¶ 4. According to the counterclaim, the "[p]laintiff then had the Bill of Sale signed by someone who had no authority to enter into such an agreement on behalf of the [d]efendants, as the only individuals with apparent or express authority to do so were Mr. Soman and Mr. Jabbar." Rec. doc. 9-1, p. 2, ¶ 5. Further, the defendants claim that the "[p]laintiff fraudulently structured her own loan and claimed to have paid $4,000 as a down payment for the vehicle, however, no money was ever received by the [d]efendants and no receipt of such has ever been presented." Rec. doc. 9-1, p. 2, ¶ 6. When Mr. Jabbar returned to the country, he learned of the situation and requested that the plaintiff return the vehicle. The plaintiff refused to do as such, and thus, "Mr. Jabbar contacted the Baton Rouge Police Department to file a police report in order to see that the vehicle [was] returned." Rec. doc. 9-1, p. 3, ¶ 10. The defendants claim that they have been deprived of the vehicle from the time the plaintiff stole it, and thus, they seek damages as a result.

In the course of this litigation, the defendants filed the present motion for summary judgment, seeking dismissal of all claims against them based on a lack of subject matter jurisdiction. Subsequent thereto, the plaintiff filed a similar lawsuit against Expo Enterprises, Inc. d/b/a Bethlehem Motor World and Westlake Services, LLC, alleging effectively the same claims as the present suit. The Court consolidated that action with the present action. Rec. doc. 32.

**Analysis**

1. <u>Standard of Review</u>

In their motion, the defendants essentially argue that this Court should dismiss the plaintiff's ECOA claim based on the evidence presented, and as a result of this dismissal, the Court must then dismiss the remaining state law claims based on a lack of subject matter jurisdiction. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P. 56(a). The movant must demonstrate that there is no genuine issue of material fact for trial. When the non-moving party has the burden of proof at trial, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party can do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not . . . competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th

Cir. 1991). Furthermore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

"In a motion for summary judgment, a federal district court is not called upon to make credibility assessments of conflicting evidence." *Melancon v. Ascension Parish*, 823 F. Supp. 401, 404 n.19 (M.D. La. 1993). "To the contrary, all evidence is considered in the light most favorable to the non-movant." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (quoting *Anderson*, 477 U.S. at 255).

2.  <u>Plaintiff's Equal Credit Opportunity Act Claim</u>

The plaintiff claims that the defendants violated the ECOA and Regulation B by failing to provide the required notice of adverse action, and as a direct and proximate result of such violation, the plaintiff suffered actual damages. Congress passed the ECOA "to insure that the various financial institutions and other firms engaged in the extensions of credit exercise their responsibility to make credit available with fairness, impartiality, and without discrimination on the basis of sex or marital status." Act of October 28, 1974, Pub. L. No. 93-495, § 502, 88 Stat. 1500. Under the ECOA, "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). Pursuant to the statute, "'adverse action' means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The statute defines "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who

5

participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). The ECOA also provides for a private right of action, whereby "[a]ny creditor who fails to comply with any requirement imposed . . . shall be liable to the aggrieved applicant for any actual damages sustained by such applicant." 15 U.S.C. § 1691e(a).

In order to satisfy the notice requirement, a creditor must:

> (A) provid[e] statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>
> (B) giv[e] written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d)(2). "A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3). However, where a "creditor . . . did not act on more than [150] applications during the calendar year preceding the calendar year in which the adverse action is taken," the notice requirements "may be satisfied by verbal statements or notifications." 15 U.S.C. § 1691(d)(5). Moreover, the Code of Federal Regulations provides that creditor must supply the required notification to the relevant applicant within "30 days after taking adverse action on an existing account." 12 C.F.R. § 202.9(a)(1)(iii).

The defendants' initial contention is that the ECOA does not apply to the present matter, because Bethlehem is not a "creditor" within the meaning provided in the statute. Specifically, the defendants claim that Bethlehem only refers applications for credit, and thus, it does not fall within the ECOA's definition of a creditor. However, based on the evidence presented before this Court, there is at least a genuine issue of material fact regarding whether Bethlehem is a

creditor under the ECOA. The submitted retail installment contract and security agreement for the Lexus provides information regarding the amount financed, finance charges, and the annual percentage rate. Rec. doc. 30-2, p. 4. The document lists the seller as Bethlehem Motor World and bears the signature of a Bethlehem employee. *Id.*, rec. doc. 22-4, p. 4, 10–11. The document further provides that the buyer promises to pay approximately $8,000 at an annual percentage rate of 24.90 percent. *Id.* The installment contract also states that the annual percentage rate may be negotiable with the seller, which the contract lists as Bethlehem. *Id.* at p. 8. Finally, the last page of the contract provides that Bethlehem assigned the contract and security agreement to Westlake Financial Services. Rec. doc. 30-2, p. 9. Accordingly, based on the face of the installment contract and viewed in the light most favorable to the plaintiff, there is a genuine issue of material fact as to whether Bethlehem is a creditor pursuant to the ECOA, as the contract shows that Bethlehem extended credit to the plaintiff at a specific annual percentage rate and subsequently assigned the contract to Westlake.

Next, the defendants contend that even if Bethlehem is an ECOA creditor, there is no evidence that Bethlehem took adverse action against the plaintiff. According to the defendants, only Westlake could have possibly taken adverse action against the plaintiff. However, the Court finds sufficient evidence to show a genuine issue of material fact. There is evidence that Bethlehem and Imn Jabbar informed the plaintiff that she must remit an additional $2,000 for the vehicle. *See e.g.* rec. doc. 30-2, p. 2, ¶ 11. Further, the retail installment contract provides that Bethlehem sold the Lexus to the plaintiff on credit, yet it is undisputed that the defendants subsequently reported the vehicle as stolen. *See* rec. doc. 30-2, p. 2–4. If Bethlehem was the original creditor and sold the vehicle on credit to the plaintiff—as the face of the retail installment contract appears to support—then a subsequent report that the same vehicle had been

7

stolen would fall within the definition of an adverse action. The only explanation for why the vehicle could have been "stolen" in those circumstances is if Bethlehem revoked or made some other modification to the previous extension of credit. Accordingly, based on the evidence presented, the Court finds that there is a genuine issue of material fact as to whether the defendants took "adverse action" against the plaintiff within the meaning of the ECOA.

Additionally, the defendants claim that even if they are creditors and even if they took adverse action, they provided the required verbal notice to the plaintiff, because they did not act on more than 150 credit applications in the calendar year preceding the alleged adverse action. *See* 15 U.S.C. § 1691(d)(5). Nevertheless, the record is insufficient for this Court to find no genuine issue of material fact that the defendants provided the requisite notice. Even if Bethlehem did not act on 150 applications in the year preceding the alleged adverse action, as the defendants claim, it still must provide the required ECOA notification verbally. Rec. doc. 22-8, p. 4, ¶ 21. *See also* 15 U.S.C. § 1691(d)(5). The Court is unable to find sufficient evidence regarding any notice allegedly provided to the plaintiff, whether oral or written. In fact, the only evidence of any notification from the defendants to the plaintiff is that the plaintiff would need to provide an additional $2,000 down payment or return the vehicle. Rec. doc. 22-9, p. 16; rec. doc. 30-2, p. 2–3. As this notification alone would not satisfy the ECOA requirements, even if oral notifications were permitted, the Court finds that there is a genuine issue of material fact regarding whether the requisite notice has been provided to the plaintiff.

Finally, the defendants contend that there is no evidence that the plaintiff suffered actual damages resulting from the failure to notify. However, the Court finds this argument wholly unavailing. Actual damages recoverable under the ECOA include "out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation or embarrassment." *Fischl v.*

*General Motors Acceptance Corp.* 708 F.2d 143, 148 (5th Cir. 1983) (citing *Anderson v. United Finance Co.,* 666 F.2d 1274 (9th Cir. 1982); *Owens v. Magee Finance Serv. of Bogalusa, Inc.,* 476 F. Supp. 758 (E.D. La. 1979)). There is adequate evidence to raise a genuine issue regarding whether the plaintiff suffered actual damages resulting from the alleged failure to notify under the ECOA. *See* rec. doc. 22-4, p. 21. If the defendants failed to comply with their ECOA requirements, this Court could find that such failure resulted in the damages allegedly suffered by the plaintiff, including the alleged humiliation and embarrassment resulting from the revocation of credit and the police report filed as a result.

Accordingly, looking at the evidence in the light most favorable to the plaintiff, the Court cannot grant the defendants' motion for summary judgment as to the plaintiff's ECOA claim. Accordingly, the ECOA claim is still pending before this Court, and thus, the Court retains jurisdiction over the supplemental state law claims.

## Conclusion

Therefore, the Court **DENIES** the defendants' Motion (rec. doc. 22) for Summary Judgment Due to Lack of Subject Matter Jurisdiction. Furthermore, as the Court has ruled on the motion for summary judgment, the defendants' motion to strike (rec. doc. 31) is now **MOOT**. Nevertheless, the Court cautions the attorney for the plaintiff to strictly adhere to all Court imposed deadlines.

Signed in Baton Rouge, Louisiana, on July 18, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**